UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L. JULIET W. THOMASON,<br><br>  Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN, Commissioner of the Social Security Administration,<br><br>  Defendant. | Case No.: 13-cv-1479-YGR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

On April 2, 2013, Plaintiff L. Juliet W. Thomason filed this action seeking judicial review of Administrative Law Judge ("ALJ") Timothy C. Terrill's decision that she is not disabled under sections 216(i) and 223(d) of the Social Security Act. Pending before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 17, 21, 23.) Thomason argues that the ALJ erred by finding certain of her impairments non-severe, and by failing to articulate legally sufficient reasons for discrediting her testimony. Defendant Commissioner Carolyn W. Colvin counters that the ALJ committed no reversible error.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment.

### I.  PROCEDURAL BACKGROUND

Thomason filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 1, 2002. (Record at 15.) Her claim was denied on June 9, 2010, and upon reconsideration on October 4, 2010. (*Id.*) Thomason subsequently requested a hearing before an ALJ. (*Id.*)

The ALJ held a hearing on June 9, 2011, at which Thomason appeared and testified. (*Id.*) Michael L. Stinson, an impartial vocational expert, also appeared at the hearing. (*Id.*) In a decision dated June 24, 2011, the ALJ found that Thomason was not disabled, as defined in the Social Security Act, at any time from January 1, 2002 through June 30, 2008. (*Id.* at 15, 26) The Appeals Council declined to review the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 5.) It is from that decision that Thomason now appeals. (Dkt. No. 1.)

### II.  APPLICABLE LEGAL STANDARDS AND FRAMEWORK

This Court has jurisdiction under 42 U.S.C. section 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ. *Burch*, 400 F.3d at 679.

The SSA uses a five-step sequential framework to determine whether a claimant is disabled. At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). A person is involved in substantial work activity if she engages in work that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 404.1572(b). If the claimant is engaged in substantial gainful activity, she is not disabled. If the claimant does not engage in substantial gainful activity, then the ALJ proceeds to Step Two of the evaluation.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment or combination of impairments, she is not disabled. If the claimant does have a severe impairment or combination of impairments, then the ALJ proceeds to Step Three.

At Step Three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step.

Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RF Capacity"). 20 C.F.R. § 404.1520(e)). A claimant's RF Capacity consists of his ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. The ALJ considers both severe and non-severe impairments in determining the claimant's RF Capacity. 20 C.F.R. §§ 404.1520(e), 404.1545.

At Step Four, the ALJ must determine whether the claimant has the RF Capacity to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the RF Capacity to perform past relevant work, she is not disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At Step Five, the ALJ considers the claimant's RF Capacity, age, education, and work experience in determining whether the claimant can perform any other work besides past relevant work. 20 C.F.R. § 404.1520(g). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work and fulfills the duration requirement, she is disabled.

## III. DISCUSSION

### A. The ALJ's Decision

The ALJ applied the five-step sequential analysis to determine whether Thomason is disabled and eligible for disability insurance benefits. (Record at 17–26.)

At step one, the ALJ determined that Thomason last met the insured status requirements of the Social Security Act on June 30, 2008, and had not engaged in substantial gainful activity from January 1, 2002 through her date last insured of June 30, 2008. (*Id.* at 17.)

At Step Two, the ALJ determined that Thomason "has the following severe impairment: degenerative disc disease (20 CFR 404.1520(c))." (*Id.*) The ALJ noted that medical evidence in the record indicated that Thomason has been treated for myriad other physical ailments but concluded that none of these conditions qualified as "severe." The ALJ specifically acknowledged that the record presented evidence of treatment for the following ailments: hypertension, hyperlipidemia, obstructive sleep apnea, right Achilles tendonitis, plantar fasciitis, bilateral trochanteric burstitis, status post rotator cuff tear with residual right shoulder soreness treated with physical therapy, and bilateral elbow pain treated with steroid injections and tennis elbow brace. (*Id.* (citing Exhs. 3F, p.2; 4F, p. 1–12; 5F; 6F; 9F; 10F; 11F; and 21F–26F).) The ALJ noted that these ailments were managed medically and could be controlled with appropriate medication and treatment, and that no aggressive treatment was recommended or anticipated for these conditions. (*Id.*) The ALJ next considered Thomason's history of obesity, concluding that there was no evidence of any specific or quantifiable impact such that it qualified as a severe impairment. (*Id.* at 18.)

The ALJ also considered Thomason's medically determinable mental impairments, specifically depression and anxiety. To determine whether these impairments qualified as severe, the ALJ evaluated Thomason's treatment records, the reports of the psychological consultative examiner and Thomason's treating physicians, and Thomason's statements.

First, the ALJ noted that Thomason's medical records evinced intermittent treatment consisting of psychotropic medication for her depression and post-traumatic stress disorder, noting record evidence that these impairments were managed by medication compliance and that there was no history of decompensation. (*Id.* at 18–19.)

Next, the ALJ considered the findings of Dr. Lehr, a consultative examiner who assessed Thomason's mental health in October of 2003. Dr. Lehr concluded that Thomason exhibited only mild limitations and it was unclear if her symptoms constituted a clinical diagnosis. The ALJ found Dr. Lehr's conclusions to be supported by evidence of record, including Thomason's treatment history and her admitted activities of daily living, and accorded Dr. Lehr's opinions significant weight. (*Id*. at 19.)

The ALJ then considered the opinion of psychological consultative examiner, Dr. Baumbacher, who assessed Thomason in-person in October of 2003. Upon review of the Thomason's treatment records, psychological testing results, and his own findings, Dr. Baumbacher determined that Thomason was unable to return to her previous position as a domestic violence counselor. (*Id*. at 20.) However, Dr. Baumbacher concluded that Thomason could return to other work. (*Id*.) Finding that Dr. Baumbacher's results comported with other evidence of record, the ALJ accorded Dr. Baumbacher's opinions significant weight.

The ALJ assigned only little weight to the opinions of Thomason's treating physician, Dr. Gardner. The ALJ reviewed the disability statement form regarding Thomason's mental limitations completed by Dr. Gardner in October 2010 and noted that Dr. Gardner's form was "brief, conclusory, and inadequately supported by clinical findings." (*Id*. at 20.) The ALJ deemed Dr. Gardner's write-up unworthy of deference because Dr. Gardner did not adequately consider Thomason's admission that her symptoms were controlled with medication, and because his conclusions were inconsistent with the medical evidence of record supporting Thomason's higher degree of functionality and Thomason's admitted activities of daily living. (*Id*.)

In light of this evidence, the ALJ concluded that the effects of Thomason's medically determinable mental impairments do not cause more than minimal limitation in her ability to perform basic mental work activities, and therefore do not qualify as severe. (*Id*. at 18.)

At Step Three, the ALJ found that through the date last insured, Thomason did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments" under the regulations. (*Id*. at 21.) As a result, before proceeding to Step Four, the ALJ made a determination regarding Thomason's RF Capacity, considering "all symptoms and the extent

to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as required by 20 C.F.R. sections 404.1529 and 404.1527. (*Id*.)  The ALJ specifically noted that when considering Thomason's symptoms, he "must follow a two-step process." (*Id*.)  First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id*.)  "Second, once an underlying physical . . . impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id*.)  If the claimant's stated intensity, persistence, or functionally limiting effects of pain are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. (*Id*.)

The ALJ evaluated evidence of Thomason's mental and physical impairments and ultimately determined that Thomason has the RF Capacity to perform a range of light work as defined in 20 C.F.R. section 404.1567(b) subject to certain limitations. (*Id*.)  In making this RF Capacity determination, the ALJ considered the opinions of the State agency review physicians, the opinions of consultative examiners, the findings and opinions of the claimant's treating physicians, the Thomason's testimony, her past medical history, and the diagnostic and clinical findings of record. Although Thomason "testified she suffered from mental and physical impairments that prevented her from being able to work" such as anxiety, and difficulty standing, lifting, and remembering things, the ALJ found that other evidence of record contradicted Thomason's claim of complete disability. (*Id*. at 22.)

In reaching this conclusion, the ALJ considered Thomason's stated activities, noting that Thomason admitted that she was "able to take care of her mother, give her diabetic cat insulin shots, read the newspaper, work on crossword and Sudoku puzzles, use a blackberry phone, cook, attend her self-care, care for her cats, do laundry, perform light household chores, drive, go grocery shopping, manage her finances, watch television, read, regularly attend social functions, and babysit." (*Id*. at 22.)  The ALJ also found that Thomason "reported she took care of her mother who

required 24-hour oxygen" and "took her mother to her appointments, refilled her mother's prescriptions and reminded her to take them, prepared her mother's meals, and bathed and helped attend her mother's personal care." (*Id*.) The ALJ concluded that "some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (*Id*.) The ALJ further found Thomason's claim of complete disability not fully credible insofar as she had "admitted to consultative examiner Dr. Baumbacher that her symptoms had improved with treatment and she was exploring the plans of returning to work." (*Id*.) The ALJ interpreted this statement as indicating that Thomason believed she had some capacity to work prior to her date last insured, which he deemed inconsistent with her claim of disability. (*Id*.)

The ALJ accorded little weight to the opinions of Dr. Harig, Thomason's chiropractor, noting that Dr. Harig's statements were "conclusory" and not supported by the medical evidence of record. (*Id*.) Similarly, the ALJ considered but accorded little weight to the third-party statements of Thomason's mother and her friend. The ALJ found that Thomason's admitted activities of daily living, including the admission that Thomason is the sole caregiver to her mother who is disabled, contradicted Dr. Harig's opinion that Thomason was completely disabled. (*Id*. at 23.) The ALJ further noted that both Thomason's mother and her friend could not provide unbiased opinions as they had close personal relationships with Thomason. (*Id*. at 24.)

Having made the RF Capacity determination, the ALJ proceeded to Step Four and evaluated Thomason's documented vocational background, her testimony, and the testimony of a vocational expert, and determined that although Thomason is unable to perform her past relevant work, Thomason is capable of making a successful adjustment to other work that exists in significant numbers in the national and local economy. (*Id*. at 24–25.)

At Step Five, the ALJ held that Thomason was not under a disability, as defined in the Social Security Act, from January 1, 2002, the alleged onset date, through June 30, 2008, the date last insured. (*Id*. at 26.)

**B.     ALJ's Purported Errors**

In her motion for summary judgment, Thomason argues that the ALJ erred in two ways: (1) by finding that only Thomason's degenerative disc disease qualified as a "severe" impairment at Step Two; and (2) by failing to articulate legally sufficient reasons for discrediting Thomason's testimony concerning the severity of her symptoms. The Court considers each argument in turn.

**1.     The ALJ's Step Two Analysis**

Thomason argues that the ALJ erred by finding that certain of Thomason's physical and mental impairments were not "severe." (Mot. at 7, 9; Reply at 4.) Specifically, Thomason argues that the ALJ should have found her mental impairments, Achilles tendonitis, plantar fasciitis, bilateral trochanteric bursitis, status post rotator cuff tear, and elbow pain severe, and that the ALJ's failure to do so constitutes reversible error. (Mot. at 7–8.) The Court does not agree.

At Step Two of the five-step sequential analysis, the ALJ considers whether a claimant suffers from a "severe" impairment or combination of impairments. 20 C.F.R. §§ 404.1520, 416.920. If an impairment, or a combination of impairments, significantly limits the claimant's ability to perform a basic work activity and has lasted, or is expected to last, for at least a year continuously, those impairments are considered "severe." 20 C.F.R. §§ 404.1520, 416.920. In practice, Step Two functions as a screening mechanism to eliminate cases where the alleged disabilities result in impairments so slight that there is no interference with the claimant's ability to work. *See Bowen v. Yuckert*, 482 U.S. 137, 154 (1987). If the ALJ erroneously determines that an alleged impairment is not "severe," at Step Two, a reviewing court must assess whether the error was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

Here, the ALJ did not conclude that Thomason's mental health and physical impairments, listed above, qualify as "severe" impairments. However, the ALJ did determine that Thomason's degenerative disc disease is a severe impairment. (Record at 17.) Upon finding that Thomason suffered from this severe impairment, the ALJ then undertook the entire five-step sequential analysis, wherein he considered the limitations alleged by Thomason including her mental health, Achilles

tendonitis, rotator cuff injury, elbow pain, and other impairments. (*See id.* at 18–24.) The ALJ expressly stated that "[i]n order to determine the claimant's residual functional capacity, the undersigned has considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are nonsevere." (*Id.* at 21.) Thus, even if Thomason is correct that her enumerated impairments should have been considered severe at Step Two, any error was harmless because the ALJ considered those limitations later in the sequential evaluation process. *See Lewis*, 498 F.3d at 911 (ALJ's failure to find impairment "severe" at Step Two was harmless because ALJ considered impairments when assessing plaintiff's RF Capacity). Accordingly, a different outcome on this ground would not, in itself, change the ultimate result.

### 2. The ALJ's Credibility Finding

Thomason argues that the ALJ's decision to credit only partially her subjective statements of pain was not supported by clear and convincing reasons and therefore constitutes reversible error. (Mot. at 22.) The Court does not agree. First, the ALJ's stated reasons for discrediting her testimony are supported by substantial evidence. Second, the Court has independently reviewed the record and finds that the weight of evidence contravenes Thomason's stated degree of impairment. Third, arguments presented by Thomason are unavailing. The Court considers each of these in turn.

In general, an ALJ cannot discredit a plaintiff's subjective pain testimony without making "specific findings justifying that decision." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (citation omitted). Here, the ALJ found that Thomason had produced evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptoms. Thus, any adverse credibility findings must be supported by clear and convincing reasons as to why the claimant's testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole. *Id.* (citing *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989)). In deciding credibility, an ALJ may consider many factors, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035,

1039 (9th Cir. 2008) (citations omitted). If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Id*.

The ALJ's articulated reasons for discrediting Thomason's testimony easily meet this standard. First, the ALJ noted that objective evidence of record and Thomason's admitted activities of daily living contradicted Thomason's claim of complete disability. In her function report submitted in May of 2010, Thomason stated that she is "able to take care of her mother, give her diabetic cat insulin shots, read the newspaper, work on crossword and Sudoku puzzles, use a blackberry phone, cook, attend her self-care, care for her cats, do laundry, perform light household chores, drive, go grocery shopping, manage her finances, watch television, read, regularly attend social functions, and babysit." (*Id*. at 22; 223-30.) The ALJ also found that Thomason "reported she took care of her mother who required 24-hour oxygen" and "took her mother to her appointments, refilled her mother's prescriptions and reminded her to take them, prepared her mother's meals, and bathed and helped attend her mother's personal care." (*Id*.) After assessing the nature of Thomason's daily activities, the ALJ stated that not only was Thomason's claimed degree of impairment contradicted by the fact that she was able to perform these daily activities, but that "some of [Thomason's admitted] physical and mental abilities and social interactions required in order to perform [Thomason's admitted daily] activities are the same as those necessary for obtaining and maintaining employment." (*Id*.) The ALJ thus concluded that Thomason's claim of complete disability was not fully credible. Thomason does not contest the fact that she performs such daily activities, nor does Thomason dispute the ALJ's conclusion that these activities require functionality that would be necessary in a work context. Having reviewed the evidence of record, the Court finds that Thomason's admitted daily activities amounted to substantial evidence that undermine her claim of complete disability. The ALJ's decision to credit only partially her testimony was supported by substantial evidence.

Second, the ALJ inferred that Thomason's mental and physical impairments were not all-disabling in light of the nature and extent of treatment Thomason sought and received for said impairments. The ALJ was permitted to draw this inference. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that

10

"evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received")). The ALJ noted that with respect to her mental health, Thomason received "intermittent conservative treatments of prescribed psychotropic medication for the diagnoses of depression and post-traumatic stress disorder." (Record at 18–19.) He further noted that she was never hospitalized during the relevant period of time, nor did she receive psychotherapy. (*Id*. at 19.) Moreover, the record evidence suggested that Thomason's mental health was managed with medication compliance during the relevant time period. (*Id*.) Likewise, as to Thomason's physical impairments, the evidence of record reflects conservative treatment for her degenerative disc disease, and physical therapy and injections at the site of joint pain. (*See, e.g., id*. at 23, 512, 513, 514, 521.) This evidence further supports the ALJ's decision to only partially credit Thomason's claim of complete disability.

Third, the ALJ found that Thomason's statements concerning the intensity, persistence and limiting effects of her symptoms was "greater than expected in light of the objective evidence of record." (Record at 22.) For example, the ALJ noted that Thomason "admitted to consultative examiner Dr. Baumbacher that her symptoms had improved with treatment and she was exploring the plans of returning to work." (*Id*.) The ALJ found that this statement indicated that Thomason had believed she had some capacity to work prior to her date last insured, and thus, was inconsistent with her claim for disability. (*Id*.) That conclusion was supported by substantial evidence.

After an independent review of the record, this Court concludes that the ALJ's finding that Thomason's claimed degree of impairment was greater than expected in light of the objective evidence of record is supported by substantial evidence. The balance of record evidence, including the report of Dr. Baumbacher and treatment notes, discussed more in depth below, contradicts Thomason's claim of complete disability. Plaintiff's claim that select evidence of record tips in her favor is unavailing in view of the evidence of record as a whole.

For example, Thomason's statements to Dr. Baumbacher evinced that she believed she could and indeed was planning on returning to work. Thomason speculated to Dr. Baumbacher about what sort of work she would like to do "in the future," and expressed a belief that she needed a work environment that was different than her past work environment. (*Id.* at 280-81.) She "had discussed various possibilities with the vocational rehabilitation counselor" including that "she thought that she might get more training" in "working with children." (*Id.* at 281.) "She had ideas about starting a program to help children deal with grief," and opined that "she could help children deal with the loss of a parent." (*Id.*) Her statements do not suggest that she was unable to return to any sort of work. Moreover, Dr. Baumbacher's conclusions endorsed Thomason's view of what sort of work she could do. Dr. Baumbacher determined that although Thomason was unable to return to her previous position as a domestic violence counselor, Thomason could return to work such as that she described. (*Id.* at 20, 306. ("I would agree that [working with children] would be a reasonable and feasible alternative career choice, and that Ms. Thomason could work as a Case Management Specialist in a clinical setting that did not involve exposure to violence.").) This evidence contradicts Plaintiff's claim of complete disability and it was reasonable for the ALJ to consider it.

Furthermore, the Court finds that other evidence of record corroborates the ALJ's conclusion that Thomason's claim of complete disability was not credible. The Court specifically notes that treatments notes from Dr. Tompkins, who treated Thomason for joint pain relating to her shoulder and elbow intermittently starting in 2002 through 2011, the relevant time period, indicate that conservative treatment was effective and confirm that Thomason's activities of daily living cannot reasonably be understood as those of a person suffering from complete disability. (*See* Record at 609 (treatment note from March 2, 2011, noting that Plaintiff was "concerned about her Colorado River rafting trip in 05/2011," and scheduling a corticosteriod injection appointment before that trip); 512 (treatment note from May 19, 2010, noting that Thomason "has good supraspinatus strength against resistance without much pain and full range of motion); 513 (treatment note from April 22, 2010, reporting that Thomason was "doing the 'downward facing dog' in the yoga class" approximately one month before, and "has functional, though mildly limited motion"); 514 (treatment note from November 2, 2009, documenting that Thomason is "doing very well" after

rotator cuff repair, and is "just about ready to finish up with physical therapy"); 515 (treatment note from October 19, 2009, recording Thomason's full range of motion and normal elbow stability); 516 (treatment note from September 21, 2009, documenting that Thomason "has a good active range of motion and gestures normally"); 517 (treatment note from August 20, 2009, noting that a month following right shoulder arthroscopy, Thomason is "doing very well," "is rarely using her sling," and "made good progress with physical therapy"); 526 (treatment note from June 30, 2004, noting that Thomason rode a bike and went kayaking in 2003); 527 (treatment note from March 21, 2003 noting that Thomason "is doing very well" and "is working independently on strengthening and she is here to make her trip to the Galapagos Islands"). The evidence that Thomason responded favorably to conservative treatment and her documented participation in recreational physical activities further undermines her claim of complete disability.

In her Motion, Thomason takes issue with the ALJ's failure to discuss specifically various notes documenting the existence of physical ailments or the findings of L. Zabatta, a field office representative who completed a disability report concerning Thomason in March of 2010. In particular, the field office representative observed that Thomason appeared nervous and scattered during a disability determination interview. (*Id*. at 178.) Thomason contends that the ALJ should have considered Thomason's various noted ailments and that "the ALJ's failure to consider [Thomason's] testimony as supported specifically by the contemporaneous observations by L. Zabatta in this case constitutes error." (Mot. at 4.) The Court disagrees. An ALJ is not obligated to discuss every piece of evidence in the record. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). In fact, the ALJ is not permitted to selectively analyze the evidence, but rather, must assess the record as a whole to render a decision supported by substantial evidence. *See id.* As explained above and by the ALJ in his decision, the weight of record evidence does not support Thomason's claim of complete disability.

Thomason further suggests that the ALJ's decision not to credit the field office representative's observations was somehow inconsistent with his decision to credit Dr. Baumbacher, who "was only a one-time examiner." (Mot. at 8–9.) Thomason's argument is unpersuasive. Dr. Baumbacher is a medical professional who rendered a medical opinion; the field office

representative is not a medical professional and recorded a non-medical impression. It was therefore reasonable for the ALJ to treat differently the opinion of Dr. Baumbacher and the remark recorded by the field office representative. Moreover, in electing to credit Dr. Baumbacher, the ALJ made a reasonable decision supported by substantial evidence. Dr. Baumbacher conducted an in-person evaluation of Thomason lasting three and a half hours. He reviewed Thomason's medical records and previous psychological testing results. And Dr. Baumbacher provided a fulsome explication – a 38-page single-spaced report – of her psycho-social and medical history, along with statements that Thomason herself made concerning her ability to do other work, to support his finding that although Thomason could not return to her past work, she was able to work in a different capacity. The field office representative provided only five lines of text on an otherwise empty form. (Record at 179.)

Finally, Thomason argues that it was unreasonable for the ALJ to discredit her because in 2003, she told Dr. Baumbacher that she was exploring plans to go back to work. Thomason points to her failed attempt to work in the catering industry as proof that she is disabled. (*See* Mot. at 9.) The Court finds this argument illogical and unpersuasive. That Thomason was unable to maintain a job in the catering industry, which requires a great deal of physical stamina and strength, does not establish that Thomason is unable to do any other sort of work. Moreover, as explained in detail above, Thomason's statement to Dr. Baumbacher evinced that in 2003 she believed she was capable of returning to work, a fact that undermines her claim that she has been disabled since 2002. It was thus reasonable for the ALJ to consider this evidence in his assessment of her credibility.

In sum, the ALJ's reasons for discrediting Thomason's testimony are supported by substantial evidence in the record. Thomason's arguments to the contrary are unavailing. Accordingly, the Court will not disturb the ALJ's adverse credibility determination.

**IV.   CONCLUSION**

For the foregoing reasons, the Court **DENIES** Thomason's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED**.

Date: May 2, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**